**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO.  1:07CV127-1-T
(1:02CR04)**

| | |
|---|---|
| **HARRY NOLAN MOODY,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )  **MEMORANDUM AND** |
| | )  **O R D E R** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed April 9, 2007; Respondent's motion for summary judgment, filed July 3, 2007; and Petitioner's response thereto, filed September 4, 2007.  For the reasons stated herein, the Government's motion is granted and Petitioner's motion to vacate is denied and dismissed.

**I. PROCEDURAL HISTORY**

On January 9, 2002, Petitioner and six other individuals were charged in a three-count indictment with possession of pseudoephedrine

and ethyl ether with intent to manufacture methamphetamine and aiding and abetting that offense in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count One); conspiracy to possess pseudoephedrine and ethyl ether with intent to manufacture more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846 (Count Two); and conspiracy to manufacture and distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846 (Count Three).  **Bill of Indictment, filed January 9, 2002.**  The indictment also charged Petitioner with committing these offenses after having been convicted of the felony drug offense of possession of a controlled substance in the state court of Henderson County, North Carolina, in 1975.  *Id.*  The same day the indictment was filed, the Government filed an information pursuant to 21 U. S. C. § 851 noticing therein the Petitioner's previous conviction for a felony drug offense on February 12, 1975, in Henderson County Superior Court Division, for "possession of methamphetamine."  **Information Pursuant to 21 U.S.C. § 851, filed January 9, 2002.**  Subsequently, the Government amended the § 851 notice by alleging that Petitioner had a previous conviction in 1975 for "possession of Schedule II controlled substance."  **Amended Information Pursuant to 21 U.S.C. § 851, filed May 2, 2002.**

On July 15, 2002, after a four day trial, Petitioner was convicted on Count Three.[1] **Verdict Sheet, filed July 15, 2002**. On March 27, 2003, this Court sentenced Petitioner to a 360 months imprisonment and eight years of supervised release. **Judgment of Conviction in a Criminal Case, filed April 10, 2003**.

Petitioner filed a notice of appeal of his conviction and sentence.[2] **Notice of Appeal, filed May 15, 2003**. On appeal Petitioner argued: prosecutorial misconduct in the form of improper closing remarks denied him a fair trial; the district court erred in admitting hearsay testimony by an investigator about Petitioner's wife; the district court erred in admitting a co-conspirator's statement that was made outside the scope of the conspiracy; and the district court abused its discretion in refusing to instruct the jury as to the proper use of admitted evidence pursuant to Rule 404(b). **United States v. West**, **98 F. App'x 259 (4th Cir. 2003)**. Petitioner filed a supplemental appeal brief challenging, among other things, the determination that he was a career offender. **Id. at 261.** On June 3, 2004,

---

[1] The Government dismissed Counts One and Two of the indictment during the trial.

[2] The Defendant's notice of appeal was deemed timely filed, the Defendant having shown good cause for the late filing. **See Order, filed June 12, 2003.**

the Fourth Circuit Court of Appeals affirmed Petitioner's sentence and conviction. *Id.*

Petitioner was granted a writ of *certiorari* by the Supreme Court. ***West v. United States*, 543 U.S. 1108 (2005).** The Supreme Court vacated and remanded the case to the Fourth Circuit for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005). On May 24, 2006, the Fourth Circuit affirmed Petitioner's sentence, holding that the district court did not plainly err in applying the sentencing guidelines as mandatory. ***United States v. Moody*, 178 F. App'x 311, 312 (2006).**

Petitioner timely filed this motion to vacate alleging: 1) numerous claims of ineffective assistance by his trial counsel; 2) a prosecutorial misconduct claim; 3) a Confrontation Clause claim; and 4) that the Court erred in denying a motion for a psychological evaluation.

## II.  ANALYSIS

### A.  Confrontation Clause Claim

On direct appeal, through counsel and through his *pro se* supplemental brief, Petitioner claimed his Confrontation Clause rights were

violated by the admission of testimony about an out-of-court statement by co-Defendant Walter Anthony West. Petitioner acknowledges this claim was raised and denied on direct appeal. **See West, 98 F. App'x at 260-61.** It is well settled that the Fourth Circuit's ruling precludes this Court's review of this same claim. **See Boechenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (issues fully litigated on direct appeal may not be relitigated in a subsequent § 2255 action).** Petitioner's request to revisit issue does not provide the Court with any basis for reviewing this claim. Consequently, Petitioner's claim on this basis is dismissed.

## B. Prosecutorial Misconduct Claim

Petitioner also alleges the Government knowingly used the perjured testimony of Donna Moody, Sergeant Steve Carter, and Special Agent Brian Delmas.

Although Petitioner raised other prosecutorial misconduct claims on appeal, through counsel and through his own *pro se* supplemental brief, he did not raise this claim. In order to collaterally attack a conviction or sentence based upon errors that could have been, but were not, pursued

on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of, or must demonstrate that a miscarriage of justice would result from a refusal to entertain a collateral attack. ***See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).** Petitioner stated he did not raise this claim on direct appeal because "the knowing use of perjured testimony is best raised in a 2255 motion."

At a minimum, Petitioner has not established that the testimony offered by these individuals was false. The Court has carefully reviewed the arguments put forth by Petitioner in support of his perjury contention and is wholly unpersuaded that his arguments support a conclusion that the Government knowingly permitted the use of false testimony. Testimony partially inconsistent with other evidence does not constitute perjured testimony. Nor does conflicting testimony establish the existence of perjury. Indeed, it is the province of the jury to determine the truthfulness of a witness. Consequently, even if Petitioner establishes cause for failing to raise this issue on appeal, Petitioner's prosecutorial misconduct claim fails on the merits.

## C.  Denial of Motion for Expert Services

Petitioner also alleges the Court erred in denying his wife and co-Defendant Donna Moody's motion for an independent psychological examination because, according to the Petitioner, "[s]he was obviously in need of help." **Petitioner's Motion, at 22.**  Again, Petitioner did not raise this claim on direct appeal.  As such, for the reasons stated above, Petitioner has procedurally defaulted this claim.  *See Mikalajunas*, **186 F.3d at 492-93.**

Petitioner attempts to excuse his procedural default by asserting that his appellate counsel was ineffective for failing to raise this issue on direct appeal.  **Petitioner's Motion, at 9, 22.**[3]  Petitioner's blanket assertion that this Court ruled contrary to unidentified precedent[4] is wholly insufficient to

---

[3]  All page number references to Petitioner's motion are to the Court's pagination of the document as shown in the electronic docket system.

[4]  In his response to the Government's motion, Petitioner references, without analysis, the Supreme Court decision of *Ake v. Oklahoma*.  In *Ake*, the Supreme Court held that a criminal defendant whose sole defense was insanity, who exhibited bizarre behavior at arraignment, who was determined by a state psychiatrist to be incompetent to stand trial and was later determined to be competent if placed on large doses of Thorazine, was entitled to the assistance of a court-appointed psychiatrist.  *Ake v. Oklahoma*, **470 U.S. 68, 86 (1985).**  Donna Moody's request for a psychological examination was not based on insanity; therefore, this Court's denial of her motion does not contravene the holding in *Ake*.

establish the merit of his argument and as such he cannot establish he was prejudiced by his counsel's failure to raise this issue. Consequently, Petitioner cannot establish cause to excuse his procedural default, that is, he has not established that his counsel was ineffective for failing to raise this issue on appeal.

### D. Ineffective Assistance of Counsel

Petitioner contends he received ineffective assistance of counsel. In order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 689; *Fields v. Attorney General of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1995). Petitioner bears the burden of proving *Strickland* prejudice. *Fields*, 956

**F.2d at 1297.** If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." *Id.* **at 1290.**

### 1. Failure to Request Suppression Hearing

Petitioner alleges that his counsel was ineffective for failing to request a suppression hearing with regard to the statement and testimony of his wife and co-Defendant, Donna Pace Moody. Petitioner asserts that his wife had an "obvious need for psychiatric treatment and/or evaluation" and her "complete mental breakdown" after finding Petitioner with another woman should have been investigated and used to suppress her testimony.[5]

Petitioner cannot establish that his counsel's performance was deficient. A review of the record reveals that counsel for Petitioner's co-Defendant Walter West did raise the issue of Donna Moody's mental health and how that might impact her ability to testify. **Transcript of Trial Testimony, Vol. I, filed November 21, 2002, at 123-26.** In response, the

---

[5] Petitioner also raises the issue that his counsel should have moved to suppress Donna Moody's statement. In his § 2255 motion, however, Petitioner provides no basis whatsoever for suppressing her statement. To the extent this claim is also based upon her alleged mental health, his allegations provide no basis for suppressing her statement.

Court reviewed her pretrial and presentence materials and determined there was no information contained therein to indicate Donna Moody had in the past or presently suffered from mental health problems. *Id.* **at 123-24.** West's counsel then requested that these documents be sealed and placed in the record for appellate purposes. *Id.* **at 124.** Petitioner provides no additional information that his counsel should have presented that would have changed this ruling.

Neither can Petitioner establish he was prejudiced by his counsel's failure to request a motion to suppress. Petitioner's conclusory allegations are insufficient to support his ineffective assistance of counsel claim. ***See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("[A] habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.").**

Indeed, all witnesses are presumed competent to testify and may only be disqualified if the witness does not have knowledge of the matters about which he or she is to testify, lacks the capacity to recall the events about which he or she is to testify, or does not understand the duty to testify truthfully. ***United States v. Odom*, 736 F.2d 104, 112 (4th Cir.**

**1983);** *see also***, Fed. R. Evid. 601.**  Petitioner presents no specific facts to support a conclusion that Donna Moody did not have knowledge of the matters about which she testified, that she lacked the capacity to recall the events about which she testified, or that she did not understand the duty to testify truthfully.  Nor does Petitioner cite to case law supporting the proposition that defense counsel could have moved to have a psychiatric examination of a Government witness.  The fact that Donna Moody may have at times during her testimony stated that she did not understand a question, in no way reflects upon her ability to testify.[6]  Rather, such statements are for the jury to weigh in determining her credibility and reliability.

### 2. Failure to Call Exculpatory Witnesses

Petitioner alleges that his counsel was ineffective for failing to call Mike Elliot, an agent of the North Carolina State Bureau of Investigation, to testify.  Petitioner asserts that Elliot was a witness when Petitioner gave his

---

[6] A review of the transcript reveals that Donna Moody answered the majority of counsel's questions without clarification; however, the transcript shows a few of counsel's questions were unclear, but Moody answered those questions once they were reworded.  ***See e.g.*, Trial Transcript, Vol. I,** *supra***, at  94, 95, 99, 105.**

statement to Sergeant Carter and could therefore testify that Carter's version of Petitioner's statement was untrue.

Petitioner provides no evidence to support a conclusion that if called to testify Elliot would have testified that Carter's version of Petitioner's statement was untrue. Consequently, Petitioner's claim is based upon speculation alone and his claim is dismissed on that basis. **Nickerson, 971 F.2d at 1136.**

Petitioner also alleges that his counsel was ineffective for failing to call Robert Edwards, Petitioner's landlord in Mill Springs, North Carolina, who could allegedly have testified where Petitioner and Donna Moody were residing during the summer of 2001. Petitioner states such testimony would have proven that he lived in Mill Springs and not in Saluda, the site of the methamphetamine lab.

Petitioner also alleges that his counsel was ineffective for failing to call Kimberly Wilson of the Polk County Social Services and two unidentified Polk County deputies as witnesses. Petitioner states that their testimony would have directly refuted Donna Moody's testimony that Petitioner was living in Saluda and making methamphetamine.

Again, Petitioner provides no evidence to support to what these two individuals would have testified. As such, Petitioner's claim is again based upon speculation alone. *Id.*

Moreover, all of this allegedly available testimony that Petitioner lived in Mill Springs in the summer of 2001 is irrelevant; that is, even if he demonstrated through these witnesses that he lived in Mill Springs during the time period in question, that evidence would not have been inconsistent with the testimony at trial that he also cooked methamphetamine in Saluda and lived there as well during that same time period.[7] While additional evidence may have supported a conclusion that during the time period in question he maintained a residence and lived in Mill Springs, evidence also supports a conclusion that he lived in Saluda.[8]

---

[7] Petitioner testified at trial that Mill Springs and Saluda are only 15 miles apart. **Trial Transcript, Vol. III, filed November 21, 2002, at 547.**

[8] The conspiracy charged in the indictment covered "from in or around January, 2001 and continuing until on or about December 5, 2001." **Bill of Indictment,** *supra.* Petitioner testified that he lived in Saluda until May 2001, and moved back to Saluda in September 2001 when the power was cut off at the Mill Springs residence when Petitioner was unable to pay the electric bill. **Trial Transcript, Vol. III,** *supra***, at 528, 549, 554-55.**

### 3. Failure to Introduce Exculpatory Evidence

Petitioner also alleges that his counsel was ineffective for failing to introduce certain telephone records of himself and co-Defendant Ricky Barkley. Petitioner asserts that these records were critical because they demonstrate that no calls were placed between Petitioner and Barkley or between Petitioner and any of his co-Defendants.

Again, Petitioner cannot establish that he was prejudiced by his counsel's alleged failure to introduce the records at issue. The omission of the records referred to by Petitioner does not support a claim of ineffective assistance of counsel as Petitioner cannot establish prejudice. First, the evidence of guilt was overwhelming. *West*, 98 F. App'x at 260 ("We . . . conclude that overwhelming and independent evidence supports Moody's conviction."). Equally as significant is the fact that there was no testimony at trial suggesting the parties regularly communicated by cell phone and as such the phone records are not exculpatory.

In support of his claim, Petitioner attaches a copy of Cingular wireless records for Petitioner's prepaid account. These records cover the time period from November 1, 2001, to January 14, 2002. Petitioner also

attaches a copy of Barkley's  MCI  Worldcom wireless telephone records which cover the time period from December 2000 to April 2001.

Regardless of whether or not these records were introduced, Petitioner's claim on this basis fails because he cannot establish that he was prejudiced.  First, these records only cover a small portion of the alleged time frame of the conspiracy, *i.e.*, "from in or around January, 2001 and continuing until on or about December 5, 2001."  **Bill of Indictment, *supra*.**  Second, these phone records only show communication between Petitioner and one other co-conspirator and, at most, establish only that Barkley did not call Petitioner between December 2000 to April 2001.  These phone records cover a time period after the discovery of the first methamphetamine lab.  Petitioner does not cite to any specific testimony stating that Petitioner and Barkley called each other as part of the conspiracy.  However, Donna Moody testified that sometimes Petitioner would call co-Defendant Walter West about obtaining methamphetamine.  **Trial Transcript, Vol. I, *supra*, at 71-72.**  However, no precise time frame was attached to these calls.  Moreover, these calls were not linked to the existence of the conspiracy, but were instead related to Petitioner obtaining methamphetamine from West – not the manufacturing of

methamphetamine.  *Id.*  Consequently, had these phone records been introduced at trial, they were not exculpatory and Petitioner has failed to establish that he was prejudiced.  That is, he has not established that a reasonable probability exists that if these records had been introduced the outcome of the trial would have been different.  ***Strickland*, 466 U.S. at 689.**

4. **Failure to Review Discovery Materials**

Petitioner also alleges that his counsel was ineffective for failing to review his and Ricky Barkley's phone records.  For the reasons stated above, this claim fails as well.

Petitioner also alleges that his counsel was ineffective because he failed to recognize that testimony by Donna Moody conflicted with physical evidence introduced at trial.  More specifically, Petitioner asserts that Donna Moody's testimony that "when [Petitioner's] tank got gone, he was just in a mad rage," conflicted with the evidence that an ammonia tank was found at the lab site by the police.  **Trial Transcript, Vol. I, *supra*, at 86.** A review of the transcript reveals that no conflict existed.  Donna Moody testified that Petitioner became angry after the police confiscated his tank.

***Id.*** **([Petitioner] was asking me about his tank, threatening to kill me if he didn't get his tank back. And I told him to call Steve Carter, that he wanted to talk to him, that he was the one that had his tank.").** Consequently, trial counsel's representation of Petitioner was not deficient and he was not prejudiced thereby.

Petitioner also alleges that his counsel was ineffective for failing to review the fingerprint report which showed that West's and Barkley's fingerprints were on many of the seized items. Petitioner asserts that this failure resulted in his counsel failing to recognize Agent Delmas' false testimony.

Petitioner does not precisely identify the alleged false nature of the Delmas' testimony. In his response to the Government's motion for summary judgment, Petitioner states that had his counsel reviewed the fingerprint report he would have brought out the testimony that Barkley and West's fingerprints were on the many of the seized items. At trial, however, Delmas specifically testified that West's fingerprints were found on many of the items seized at the lab. **Trial Transcript, Vol. III, *supra*, at 461-62**. Moreover, Petitioner's counsel elicited from Agent Delmas on

cross-examination that Petitioner's fingerprints were located only on a few items.  *Id.* **at 454**.

A review of the cross-examination of Agent Delmas clearly reveals that, notwithstanding Petitioner's contention to the contrary, Petitioner's counsel had reviewed the discovery material involving the fingerprint evidence.  *Id.* **at 438-60.**  As such, Petitioner's counsel's performance was not deficient on this issue.  Moreover, Petitioner has not established how he was prejudiced; that is, he fails to establish that Delmas' testimony was untruthful and does not set forth any missing testimony that, if revealed, would have altered the outcome of the trial.

### 5. Failure to Impeach Key Government Witnesses

Petitioner also alleges that his counsel was ineffective for failing to impeach Donna Moody with her power bills from Rutherford Electric Membership.  Petitioner asserts that these records would have established an account with the power company in his name for the Mill Springs residence for the entire summer of 2001.  Petitioner states these same bills should have been used to impeach Sergeant Carter's testimony as well. Petitioner also asserts that his counsel should have impeached Sergeant

Carter's testimony when he testified that Petitioner had told him that he lived at the Saluda lab site.

Again, the fact that evidence existed to show Petitioner maintained a residence in Mill Springs, North Carolina, is not inconsistent with the testimony that he also lived in Saluda at times and, more importantly, that he used the residence in Saluda - titled in his relatives' names – to manufacture methamphetamine.  Petitioner has not established that the introduction of this evidence would have resulted in a reasonable probability that the outcome of his trial would have been different.  As such, at a minimum, Petitioner was not prejudiced by his counsel's failure to introduce these records at trial.

Petitioner also alleges that his counsel should have impeached Sergeant Carter's testimony that Petitioner admitted to him that he brought the ammonia tank from Mauldin, South Carolina, to Saluda.  Petitioner asserts that Carter's testimony about how he tracked down the owner of the ammonia tank in November, conflicts with his testimony that Petitioner told him where the tank came from.  ***Compare* Trial Transcript, Vol. I, *supra*, at 28-30 *with* Trial  Transcript, Vol. III, *supra*, at 618-19.** Petitioner's assertion that a police officer independently verifying

information supplied by a suspect is impeachment evidence is completely meritless. His ineffective assistance of counsel claim asserted on this basis is likewise without merit.

### 6. Failure to Request a Buyer-Seller Instruction

Petitioner also alleges that his counsel was ineffective for failing to request a buyer-seller instruction. Petitioner contends that although there was testimony that Petitioner bought or traded for methamphetamine, his counsel failed to request such an instruction.

A buyer-seller instruction is not necessary where the evidence supports a conclusion that the defendant not only bought and sold a controlled substance, but also assisted in its transportation or storage. *United States v. Mills,* **995 F.2d 480, 485 (4th Cir. 1993).** In the instant case nearly all of the evidence went to Petitioner's participation in the manufacturing of methamphetamine, not to his sale or purchase of the drug. As such, because the evidence did not support a conclusion that Petitioner was only a buyer or seller, such an instruction was not warranted. Petitioner's counsel was not deficient for failing to request such an instruction and Petitioner was not prejudiced.

**7. Failure to Object to Closing Argument**

Petitioner also alleges that his counsel was ineffective for failing to object to the Government's reference during closing argument to evidence that had been excluded during trial. **Trial Transcript, Vol. III,** *supra***, at 302.** The excluded testimony was a portion of West's out-of-court statement to Officer Jeffrey Patterson with the Henderson County Sheriff's Narcotic Unit in which West stated he left a larger ammonia tank with Petitioner to use, while he took a smaller tank back to South Carolina. *Id.* **at 301-02.**

Regardless of whether Petitioner's counsel should have objected, Petitioner has not established that he was prejudiced by counsel's failure to do so. This Court specifically instructed the jury that counsel's arguments were not evidence. *See* **Transcript of Closing Arguments/Jury Charge, filed June 25, 2003, at 48, 65.** In addition, the evidence produced at trial against the Petitioner was considerable,[9] and he presents no specific argument as to how an objection by his counsel would have led to a reasonable probability that but for the alleged error the

---

[9] *See West***, 98 F. App'x at 260 ("We . . . conclude that overwhelming and independent evidence supports Moody's conviction.").**

outcome would have been different. Consequently, Petitioner has failed to carry his burden of establishing that he was prejudiced. ***See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) ( a petitioner bears the burden of establishing his collateral claim by a preponderance of the evidence).**

### 8. Failure to Inform Petitioner of Amended § 851 Notice

Petitioner alleges that his counsel was ineffective for failing to inform him that an amended § 851 notice had been filed. In addition, Petitioner alleges that his counsel did not ensure Petitioner received a hearing and explanation as required by statute.

The Government filed an amended § 851 notice on May 2, 2002.[10] The only difference between the original notice and the amended notice was that the original notice referred to a conviction for possession of methamphetamine[11] while the amended notice only referred to a conviction

_____

[10] Petitioner does not allege, and the record does not support a finding, that the Government did not comply with the notice requirements of § 851(a). ***See 21 U.S.C. § 851(a) ("before trial . . . the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) . . . .").**

[11] The indictment listed this predicate offense for the statutory enhancement as a conviction for possession of a Schedule II controlled

for possession of a "Schedule II controlled substance."  The date of conviction, the county of conviction, and the nature of the offense were all the same.

At a minimum, Petitioner's ineffective assistance of counsel claim fails because he cannot establish that he was prejudiced.  In order to prevail on his ineffective assistance of counsel claim Petitioner must establish that a reasonable probability exists that but for counsel's alleged error the outcome of the criminal proceeding would have been different.  Significantly, Petitioner never asserts that he was not convicted in 1975 of possession of a Schedule II controlled substance or that such conviction did not qualify as a predicate offense for statutory enhancement purposes.[12]  As such, even if counsel had informed Petitioner about the amended § 851 notice, his counsel would have had no basis for challenging the substance of that notice.  ***See e.g., Vongkaysone v. United States*, 2007 WL 844620 (D. Me. 2007) (dismissing claim based upon counsel's failure to challenge predicate § 851 conviction where**

substance.  **Bill of Indictment, *supra.***

[12] Petitioner does not contend that the Government did not comply with the notice provisions of § 851(a).  Moreover, the record supports a conclusion that the Government complied with the notice provision.

**no evidence to support a conclusion that a basis existed for**

**challenging the conviction).**

This Court finds Petitioner's blanket assertion that he raised an

objection at his arraignment to the use of the methamphetamine conviction

and, therefore, believed the issue to be resolved, is unavailing.  First,

Petitioner presents no specific facts to support that it was reasonable for

him to make such an assumption.  More significantly, Petitioner does not

contest that he did in fact have a qualifying conviction for an enhanced

statutory sentence.   As such, Petitioner is still left with no basis for

challenging the use of this prior conviction.  Interestingly, at sentencing

Petitioner did not raise an objection to the statutory enhancement of his

sentence.  Nor, did Petitioner raise an objection on this basis in the *pro se*

supplemental brief he filed with the Fourth Circuit.

Petitioner also asserts that his counsel was ineffective for failing to

ensure that the Court complied with the inquiry required by § 851(b).   As

Petitioner did not have any basis for challenging the predicate conviction

used to statutorily enhance his sentence, Petitioner fails to establish that

he was prejudiced by this oversight.  ***See e.g., United States v. Cave*, 203**

**F. App'x 536, 538-39 (4th Cir. 2006) (dismissing appeal for failure to**

**demonstrate prejudice or ineffective assistance of counsel even though district court had not inquired about his prior convictions as required by § 851(b)); *United States v. Romero-Carrion*, 54 F.3d 15, 18 (1ˢᵗ Cir. 1995) (agreeing with all circuits to consider the issue that defects in § 851 colloquy are reviewed on appeal subject to harmless error).** Consequently, this claim is dismissed.

### 9. Failure to Investigate Prior Convictions

Petitioner alleges that his counsel was ineffective for failing to investigate and confirm that Petitioner might not have been represented by counsel with regard to two of the three predicate state court convictions used to classify him as a career criminal. Petitioner asserts that the presentence report makes it apparent that he did not have counsel with regard to two of his three predicate offenses.

Petitioner does not carry his burden on this claim of establishing that he was prejudiced. Notwithstanding Petitioner's assertion to the contrary, the presentence report does not support the conclusion that Petitioner was not represented by counsel with regard to two of the three state court predicate offenses. In fact, the presentence report specifically sets forth

that since 1973 the North Carolina courts have been statutorily required to notify defendants who are potentially subject to any term of imprisonment of their right to counsel and that in all North Carolina convictions the defendant is presumed to have been represented by counsel or to have knowingly waived representation.

Petitioner has attached printouts regarding the state court convictions at issue to his response to the Government's motion for summary judgment and asserts that he was not represented by counsel during those proceedings. Petitioner also avers in his affidavit that he was not represented by counsel for these two prior state court convictions. ***See Petitioner's Affidavit, dated August 28, 2007, *attached to* Petitioner's Response to Government's Motion for Summary Judgment, filed September 4, 2007, ¶ 10.*** The Court has reviewed these printouts and concludes they do not establish that Petitioner did not waive his right to an attorney. Moreover, the Court obtained a copy of Petitioner's state court judgment for the predicate conviction listed in paragraph 79 of his presence report.[13] This judgment, contrary to Petitioner's sworn affidavit, clearly indicates he had appointed counsel. As such, Petitioner

---

[13] The Court will direct that the Clerk file these documents as part of the record herein.

has not carried his burden of establishing that he was prejudiced.
Consequently, his ineffective assistance of counsel claim on this basis
fails.

### III.  CONCLUSION

A review of the record reveals that Petitioner's trial counsel
vigorously represented Petitioner during his criminal proceedings.
However, despite counsel's best efforts, the overwhelming evidence
against Petitioner resulted in his ultimate conviction.  Moreover, the Court
notes that the Sixth Amendment does not mandate that a defendant
receive a perfect trial, but one which is free from constitutional error.  ***See
United States v. Hasting***, **461 U.S. 499, 508-09 (1983) ("taking into
account the reality of the human fallibility of the participants, there
can be no such thing as an error-free, perfect trial,  and . . . the
Constitution does not guarantee such a trial."); *Delaware v. Van
Ardsall*, 475 U.S. 673, 681 (1986) (noting that a criminal defendant is
entitled to a "fair trial, not a perfect one").**

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's motion to vacate, set aside, or correct sentence is **DENIED**.  A Judgment dismissing this action is filed herewith.

**IT IS FURTHER ORDERED** that the Clerk file and incorporate into the record herein the Judgment and Commitment order of the State of North Carolina versus Harry Nolan Moody, File Nos. 87CRS2357, 87CRS2358, and 87CRS2359, dated November 13, 1987.

Signed: August 20, 2009

Lacy H. Thornburg
United States District Judge